IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>vs.<br><br>EDGAR LYNN CHEE,<br><br>               Defendant. | **ORDER AND MEMORANDUM DECISION**<br><br><br>Case No. 2:07-CR-00555-TC |

       The grand jury indicted Edgar Lynn Chee on a charge of unlawful killing with malice aforethought in violation of 18 U.S.C. §§ 1111(a) and 1153(a).  Mr. Chee has filed a Motion to Suppress statements that he made during an interview on August 15, 2007, with FBI agent Matt Larson and statements he made the next day, August 16, 2007, to Deputy Brian Corbitt of the United States Marshals Service.  Mr. Chee contends that the government violated his rights under Miranda v. Arizona, 384 U.S. 436 (1966), when Agent Larson continued to question Mr. Chee after Mr. Chee had requested an attorney.  He further argues although he had invoked his right to counsel the previous day, Deputy Corbitt interrogated him.

      Because Mr. Chee did not unequivocally request counsel at the beginning of the interview with Agent Larson, his statements from that interview are admissible.   But the statements Mr. Chee made to Deputy Corbitt are not admissible because the court agrees that Mr. Chee had not

waived his right to counsel.

## FINDINGS OF FACT

**August 15, 2007 Interview**

Special Agent Larson interviewed Mr. Chee on August 15, 2007, at approximately 7:30 p.m. in the San Juan County Jail in Monticello, Utah.[1] (Mr. Chee had been in custody since the previous day.) Reading from a standard FBI form, Special Agent Larson advised Mr. Chee of his rights under <u>Miranda</u>, as captured by the sound recording of the interview:

| | |
|---|---|
| Larson: | You are in custody right now. I just want to go over the situation with ya. I understand you have been very cooperative. |
| Chee: | Yeah, I [inaudible response]. |
| Larson: | You're in custody so our standard procedure is to go ahead and advise you of your rights anytime you are in custody. And this is the form that we use. You are probably familiar with all this already. But if you'd be willing to talk to me for just a second we just need to review this. And uh as you can see - do you read ok? |
| Chee: | [inaudible response]. |
| Larson: | Ok. This just says before we ask you any questions you must understand your rights. You have the right to remain silent. Anything you say could be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during questioning. If you cannot afford a lawyer, one |

---

[1] The interview was recorded and admitted at the hearing as Exhibit 2.

|||
|---|---|
| | will be appointed for you before any questioning if you wish.  If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.  That means you can answer any questions you want.  If you don't want to answer a question you don't have to.  You know, you don't have to talk to us if you don't want to basically. And then, uh, the bottom part just says I have read this statement of my rights.  I understand what my rights are.  At this time, I am willing to answer questions without a lawyer present. And I just want to get. |
| Chee: | How can I get a lawyer?  Do I have to pay for one, or. |
| Larson: | No.  According.  Just like we read right here.  If you want a lawyer one will be appointed |
| Chee: | Yeah. |
| Larson: | for no cost, at no cost. |
| Chee: | Yeah, I would. |
| Larson: | But uh if you wanna, I just want to review the situation.  And if you wanna talk to me about it |
| Chee: | Yeah. |
| Larson: | we can talk about it right now. |
| Chee: | um hum. |
| Larson: | And you can just tell me your side of what's going on. Cause I don't really understand.  If you don't want to talk to me until you talk to a lawyer that's your right too.  It's all up to you.  You can do whatever you want. |

| | |
|---|---|
| Chee: | Ok. |
| Larson: | But if you have a, if you have a minute, and you'd be willing to tell me what happened, I'd like to listen |
| Chee: | Yeah. |
| Larson: | to it. |
| Chee: | [inaudible] |
| Larson: | Would you be willing to do that?  Ok, you are shaking your head up and down.  What do you. I just need a yes or no. |
| Larson: | Yes?  Ok. |

(Recording of interview, Ex. 2.)

    Mr. Chee contends that the court should consider his question "how can I get a lawyer, do I have to pay for one" and his following words "yeah, I would" as his request for an attorney. Special Agent Larson explained that throughout the interview, Mr. Chee made "affirmative sounding responses like 'yeah, yeah,' which he had made throughout our initial–our initial conversation.  Even when I wasn't asking him questions, he was saying, 'yeah, okay.'  And sometimes when I asked him questions he would also answer affirmatively, 'yeah,' or 'okay, okay.'"  (Transcript of Feb. 11, 2008 hearing ("Tr.") at 22.)

    Special Agent Larson explained that after Mr. Chee's equivocal statements, he "wanted to be absolutely clear that–whether or not he was willing to talk to me and was willing to waive his rights." (Id.)  Satisfied that Mr. Chee understood and was willing to speak with him without an attorney, Special Agent Larson continued the interview.

    After approximately twelve minutes had passed, Special Agent Larson once again

brought up the subject of an attorney for Mr. Chee:

> Larson: You've basically been doing all the talking. I'd like to ask a few questions. Is it ok if I just ask you a few questions? Ok. And we talked earlier about the, um, what your rights are. You ok with me asking a few questions without a lawyer present? Is that, are you willing to do that?
>
> Chee: Yeah, I've got nothing to hide.

(Ex. 2.)

Special Agent Larson testified that his reason for once again asking Mr. Chee about an attorney was that "up to that point there hadn't been really an interview or any interrogation that had taken place. . . . [A]nd I had some follow-up questions for him, so I just wanted to be clear that he was willing to proceed with that." (Tr. at 14.)

Approximately forty-five minutes later, Mr. Chee said:

> Chee: Yeah, that's why I, I want to get an attorney and say hey I didn't shake anybody or choke him. That thing was,
>
> Larson: Ok.
>
> Chee: I don't know, just small.
>
> Larson: Are you saying, are you saying Edgar, are you saying this is the story you are sticking with and that you want to stop talking and that you
>
> Chee: Yeah.
>
> Larson: want to talk to an attorney?
>
> Chee: Yeah, Yeah, because I am truthful. I'm truthful.
>
> Larson: Ok.

| | |
|---|---|
| Chee: | I didn't hurt him. |
| Larson: | Alright. |
| Chee: | I mean I hurt him falling on him. |
| Larson: | Alright. |
| Chee: | It's a small house. Everybody has |
| Larson: | Well, you know if you want to talk to an attorney before you answer any more questions that is your right and we will be done talking right now. Is that what you want to do? |
| Chee: | Yeah. |
| Larson: | Ok. |
| Chee: | Yeah. Because I |
| Larson: | Edgar |
| Chee: | I am not going to go to |
| Larson: | here is what you need to do. You need to talk to people that you trust and talk about this situation because you know what really happened. |
| Chee: | Yes. |
| Larson: | Don't, hey, don't say anything else because you want to talk to an attorney. |
| Chee: | Ok. Yes. |

(Ex. 2.)

Special Agent Larson ended the interview.

**August 16, 2007 Statements to Deputy Marshal Corbitt**

On August 16, 2007, Mr. Chee arrived at the federal court house in Salt Lake City, Utah, to make his initial court appearance. Deputy Brian Corbitt of the United States Marshals Service began asking Mr. Chee background information such as his age and date of birth. During this process, Mr. Chee asked Deputy Corbitt what "second degree meant." (Tr. at 27.) Deputy Corbitt, who did not know the charge against Mr. Chee, did not understand the question. Mr. Chee continued, "for murder, I guess." (Id. at 28.) Deputy Corbitt responded, "Why, did you kill someone?" Mr. Chee answered "yeah" and continued talking. (Id. at 28-29.) Apparently recognizing that Mr. Chee was making incriminating statements, Deputy Corbitt told Mr. Chee to stop talking, but Mr. Chee continued until Deputy Corbitt told him a third time. Then Mr. Chee responded, "Yeah, I've been told that before. They told me that before." (Id. at 29.)[2]

## CONCLUSIONS OF LAW

**Mr. Chee's Statements to the Special Agent**

"After a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." Davis v. United States, 512 U.S. 452, 461 (1994). But "[l]aw enforcement officers must immediately cease questioning a suspect who has clearly asserted his right to have counsel present during custodial interrogation." Id. at 454 (citing Edwards v. Arizona, 451 U.S. 477 (1981)). The Court emphasized that an accused must "unambiguously" request counsel. Id. at 459. The Court explained that a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a

---

[2] Deputy Corbitt did not know that Mr. Chee had previously asked for an attorney.

request for an attorney.  If the statement fails to meet the requisite level of clarity, Edwards does not require that the officers stop questioning the suspect." Id.

Mr. Chee contends that at the beginning of the interview he requested counsel and that Agent Larson ignored his request and continued with the interview.  But the court concludes, based upon the recording of the interview and the testimony of Special Agent Larson (who was a very credible witness), that Mr. Chee did not make an unequivocal request for an attorney.  First, Mr. Chee uses the term "yeah" freely throughout the interview, often, it appears, as a term of understanding or acknowledgment.   For example, as Special Agent Larson was explaining that an attorney would be provided at no cost, Mr. Chee says "yeah" in the middle of that sentence.  Moreover, when Special Agent continued with his explanation, Mr. Chee nodded his head in the affirmative when asked whether he would be willing to talk to Special Agent Larson.

Significant to the court's decision, Special Agent Larson fully complied with the teaching of Davis that "when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney." Id. at 461.

United States v. Zamora, 222 F.3d 756 (10th Cir. 2000) is also instructive.  There, the court found that a suspect's statement "if that's the case, then-then I might want to talk to my attorney" was not an unequivocal invocation of the right to counsel. Id. at 756-66.

Based on the above, the court concludes that Mr. Chee did not invoke his right to counsel at the beginning of the interview and his motion to deny the statements made is DENIED.

**Mr. Chee's Statements to the Deputy Marshal**

"If [the accused] requests counsel, 'the interrogation must cease until an attorney is present.'" Edwards v. Arizona, 451 U.S. 477, 482 (1981) (quoting Miranda v. Arizona, 384 U.S. 436, 474 (1966)).  Mr. Chee contends that the statements he made in response to Deputy Corbitt's question "Did you kill someone" must be suppressed because he had invoked his right to counsel the previous day.  The court agrees.

The question by the Deputy was interrogation.  The United States Supreme Court defined "interrogation" as "express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980).  And although the court fully believes that the Deputy did not know the charge against Mr. Chee and asked his question only in response to Mr. Chee's enquiry about the meaning of "second degree," "[t]he test of whether an interrogation has occurred is an objective one." United States v. Rambo, 365 F.3d 906, 909 (10th Cir. 2004) (citing United States v. Gay, 774 F.2d 368, 379 n.22 (10th Cir. 1985)).  "The focus is on the perceptions of a reasonable person in the suspect's position rather than the intent of the investigating officer." Rambo, 365 F.3d at 909 (citing Innis, 446 U.S. at 301).

The United States contends that because Mr. Chee began the conversation with the Deputy and then disregarded the Deputy's commands to stop talking, Mr. Chee effectively waived his right to counsel.  But the United States has not met its burden to show that Mr. Chee knowingly, voluntarily and intelligently waived his right to counsel.

In the event of a communication initiated by the accused, "the question would be whether a valid waiver of the right to counsel and the right to silence had occurred, that is whether the purported waiver was knowing and intelligent and found to be so under the totality of the

circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." Edwards, 451 U.S. at 486 n.9. "If a defendant talks to officers after invoking his right to counsel, the government bears the burden of proving by a preponderance of the evidence that waiver of the right was voluntary." United States v. Roman-Zarate, 115 F.3d 778, 782 (10th Cir. 1997).

Mr. Chee did begin the conversation with Deputy Corbitt. And Deputy Corbitt did not in any way intimidate or coerce Mr. Chee. But even with those facts, looking at the totality of the circumstances, the court concludes that the United States has not met its burden of showing that Mr. Chee knowingly and intelligently waived his right to counsel.

First, Mr. Chee has a ninth-grade education. Second, English is not his first language. And finally, it appears that Mr. Chee was upset and emotional. The statements themselves are revealing: "I didn't realize he was–wasn't still breathing. I didn't mean to kill him. He was my baby." (Tr. at 28-29.) Moreover, Mr. Chee did not listen–or hear–Deputy Corbitt's order, given twice, to stop talking but continued talking until the Deputy had warned him a third time.

For the above reasons, the Court DENIES Mr. Chee's motion to suppress statements he made to Special Agent Matt Larson but GRANTS Mr. Chee's motion to suppress statements he made in response to Deputy Marshal Brian Corbitt's question.

SO ORDERED this 14th day of April, 2008.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge